IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KEVIN JOSEPH WALSH,

      Petitioner,

v.                                                   CASE NO. 4:16-cv-531-WS-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Petitioner is

proceeding pursuant to a second amended petition, ECF No. 27

("Petition").  The Petition stems from Petitioner's 2008 Leon County

conviction of arson of a dwelling, for which Petitioner received a 30-year

sentence as a prison releasee reoffender ("PRR").  The Respondent has

filed a response in opposition to the petition, together with relevant portions

of the state-court record, and Petitioner has filed a reply.  ECF Nos. 38, 41.

Upon due consideration of the pleadings and the state-court record, the

undersigned recommends that the Petition be denied.[1]

_____

[1] Because the Court may resolve the Petition on the basis of the record, the Court has
determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing

# I. **State-Court Proceedings**

Petitioner was charged by information with one count of arson of a dwelling (Count I) and one count of violation of a domestic violence injunction (Count II).  ECF No. 41-1 at 13.  Petitioner was represented at trial by conflict counsel Gregory J. Cummings.  The evidence adduced at trial may be summarized as follows.

Barbara Waltz testified that she is the mother of Petitioner's then-girlfriend, Nichole Waltz.  Barbara Waltz had a restraining order against Petitioner, and she identified Petitioner in court.  Waltz lived in a ground floor apartment in Building 300 at Savannah Sound apartments in Tallahassee.  Petitioner and Nichole had previously lived in the apartment.  In the early morning hours of August 23, 2006, Waltz awakened to discover that an exterior wall of her apartment was on fire.  Waltz and other neighbors evacuated the building.  Her personal property within the apartment was damaged.  ECF No. 41-1 at 115-22.

Marcita Barrington testified that she was working the night shift at a Circle K gas station off of Capital Circle and Centerville Road on the night of the fire.  Petitioner arrived driving a taxicab and came into the store.

---

Habeas Corpus Petitions Under Section 2254.

Barrington remembered Petitioner because he mentioned that she was alone and referred to himself as the "creepy white guy." Barrington recalled that Petitioner bought gasoline and a cigarette lighter. Barrington identified security camera photos showing the cab and Petitioner. *Id.* at 122-26.

Tallahassee Fire Department ("TFD") Battalion Chief Rod Jones testified that he responded to a call for a multi-residential fire at Savannah Sound Apartments around 2:30 in the morning of August 23, 2006. Ultimately, 25 responders were on the scene throughout the night and the rest of the following day. The building consisted of eight apartments, all occupied. *Id.* at 127-32.

TFD Investigator Frank Mohr testified that when he arrived on the scene the front of the building and part of the roof were burned. Waltz's apartment had smoke, fire, and water damage, and the apartment above her had heavy damage. Most of the roof was burned off. Waltz told Mohr that she believed Petitioner may have had something to do with the fire. Mohr contacted the state Fire Marshal and requested the assistance of a K-9 trained to detect fire accelerant. Detective Jason Roberts arrived and deployed the dog, which alerted on several places in front of the building. Mohr collected samples from those areas for analysis by the Fire Marshal's lab. Photographs of the scene and fire damage were admitted into

evidence.  The investigation showed that the fire originated in the front exterior of the building.  The front of the building was burned "from the foundation all the way up to the top and went into the attic."  Some of the pine straw mulch outside of the building was burned also.  Mohr could not determine whether the fire started on the building or in the pine straw.  *Id.* at 132-43.

Detective Jason Roberts testified that he smelled gasoline when he walked up to the building.   The K-9 alerted in several locations, and samples were taken.  Roberts determined that the fire originated on the exterior of the building and worked its way up the wall to the second floor in the roof area.  He could not determine whether the fire started on the building or on the ground next to the building.  The K-9 was alerting within three feet of the building.  It was determined that the fire was intentionally set and involved a "significant amount" of accelerant.  Even after the building had been through fire suppression, there was a significant amount of accelerant that the K-9 alerted to and that "everybody could smell."  Roberts also went to the taxicab yard and worked the K-9 through Cab No. 90, which was the cab driven by Petitioner.  The K-9 alerted on the interior near the trunk area and in the trunk.  Roberts also collected samples from the cab for analysis.  *Id.* at 143-62.

Lieutenant Joseph Steadman of the Florida State Fire Marshal's Office testified that when he arrived at the scene of the fire he noticed a very strong odor consistent with gasoline.  Mohr and Roberts informed Steadman that they had identified a suspect.  Steadman contacted ATF Special Agent Visnovske to assist with the investigation.  Steadman went to the taxicab yard.  When Petitioner arrived he was taken into custody.  *Id.* at 177-78.

Steadman interviewed Petitioner at the Leon County Sheriff's Office. When Steadman and Visnovske entered the interrogation room where Petitioner had been waiting, they detected a strong odor of gasoline.  They advised Petitioner of his *Miranda* rights, and Petitioner executed a written waiver of his rights.  Petitioner appeared nervous and had a cough, which he said was due to childhood bronchitis.  Petitioner told the officers that he did not smoke except occasionally when he is out at a bar but that it had been several weeks since he had done that.  He told the officers about Waltz's injunction against him.  Petitioner told the officers that he had gotten gasoline on his clothing while working on his motorcycle.  He stated that he had taken the gas tank off of the motorcycle and put it in the back of his cab, and a valve on the bottom of the tank leaked.  Steadman subsequently went to Petitioner's house and inspected the motorcycle.

There was no indication that gasoline had leaked from the tank. *Id.* at 178-84.

Following a break in the interview, the officers confronted Petitioner with the video evidence from the Circle K store showing that he had purchased gasoline and a lighter shortly before the fire. Petitioner dropped his head and said "well, I'm f***ed" and stated that he needed to speak with Nichole in order to take care of some financial and personal matters for her. Petitioner admitted that he was angry with Waltz. He admitted that he bought gasoline for his cab and put about 2 gallons of gasoline into a plastic bucket in the trunk of the cab. Petitioner admitted that he purchased a lighter. He became emotional and told the officers several times that he dumped the gasoline on the grass by the apartment and did not mean to burn the building. *Id.* at 184-94.

State crime laboratory analysts testified that the submitted samples from the fire scene and cab tested positive for gasoline. *Id.* at 164-75, 195-205.

At the close of the state's case in chief, Cummings moved for a judgment of acquittal on the arson count. Counsel argued that the State had not established a *prima facie* case on the intent element of the arson charge. The court denied the motion, finding that there was sufficient

circumstantial evidence of intent to create a fact issue for the jury.  *Id.* at

218-24.

The court conducted a colloquy with Petitioner regarding his decision

to testify on his own behalf.  The court also addressed the fact that the

videotape of Petitioner's interrogation was not admitted into evidence.

Petitioner stated that "I think it would help if we put it in, but I think Mr.

Cummings did a good job going over, I guess, what I would have wanted

the jury to see anyway."  Cummings stated that there were "a lot of issues

about the tape that the Court doesn't know about," such as statements by

Petitioner regarding criminal charges in Georgia and many comments

about his relationship with Ms. Waltz.  The court explained that irrelevant

matter could be edited out.  Petitioner stated "I don't want it in.  I was just

saying I thought it could have helped, but Mr. Cummings pointed out the

same things that if they seen it, I feel he accomplished the same thing."

The court reiterated that the tape could be edited if Petitioner wanted it

admitted, and that if Petitioner did not want the tape admitted he could not

"complain later that your lawyer was ineffective for not showing you the

tape or not editing it or not admitting it because [sic] sat right here and told

me you decided not to look at it, you decided to trust your attorney, and

that's fine to trust him, but these are judgment calls he has made . . . .  You

can't second guess him later, if you are sitting in prison and decide to look at this tape.  It will be too late, and that's all I need to settle, is that you understand you are making an important decision here."  Petitioner responded "yes, ma'am."  *Id.* at 215-29.

Cummings called Nichole Waltz as a defense witness.  Waltz testified that Petitioner did not smell like gasoline when he came home early in the morning after the fire.  She testified that Petitioner told her that "he had lit the ground on fire" outside the apartment and did not know that the building burned until later in the day when Waltz's grandfather called to tell her. She testified that Petitioner was "shocked" at the news.  *Id.* at 234-39.

Petitioner testified that on the night of the fire he was drinking and taking prescription medication for anxiety due to an "earlier situation" with Barbara Waltz that had upset him.  He went to the Circle K and bought gasoline, a soda, a candy bar, a small cigar, and a lighter.  Petitioner put gasoline in his cab and also put one-and-a-half to two gallons of gasoline in a five-gallon bucket in his trunk.  Petitioner then drove to Waltz's apartment complex.  He testified that most of the gas spilled and there was maybe a gallon left in the bucket.  He poured the gas on the ground to spell the word "bitch" at what he thought was a safe distance away from the building.  He testified that the area where he poured the gas was about a foot-and- a-half

to two-and-a-half feet wide by one foot tall.  He set the bucket in front of the word, lit the word and bucket on fire, and left.  Petitioner denied pouring any gas on the building.  He started the fire between three and five feet from the building at what he thought was a safe distance, "but I was inebriated, so obviously I wasn't right."  He described his actions later to Nichole as a "prank to upset her mother."   *Id.* at 239-48.

On cross-examination, Petitioner admitted that he initially lied to investigators following his arrest.  Petitioner testified that he didn't know whether he told the investigators that he spelled the word "bitch" in the grass with the gasoline.  He testified that he drank about eight rum and cokes before deciding to go to Waltz's apartment and start a fire.  He was also taking Xanax. *Id.* at 248-54; ECF No. 41-2 at 255.

The State called Lt. Steadman as a rebuttal witness.  Steadman testified that during his interview Petitioner never said he used gasoline to spell the word "bitch" in front of Waltz's apartment.  ECF No. 41-2 at 2.  No additional witnesses were called.  Cummings did not renew his motion for a judgment of acquittal at the close of all of the evidence.

Prior to Petitioner's testimony, the court discussed the proposed jury instructions.  After conferring with Petitioner, Mr. Cummings informed the court that Petitioner wanted a jury instruction on arson, but not the lesser-

included offense of attempted arson, and a jury instruction on criminal mischief causing more than $1000 in damage, a third-degree felony. Petitioner stipulated that the damage to the building was at least $100,000. The court delivered the requested standard jury instructions without objection by the defense.   ECF 41-1 at 208-12.

While the jury was deliberating, the court conducted a colloquy with Petitioner during which Petitioner stated that he was satisfied with Cummings' services and there were no witnesses or defenses that Petitioner asked him to investigate that he failed or refused to investigate. ECF No. 42-2 at 45.  The court asked Cummings if he had any concerns about Petitioner's legal competency, and Cummings responded that he had no such concerns, and that Petitioner had been "properly screened" for competency and for insanity at the time of the offense.  *Id.* at 46-49.

The jury found Petitioner guilty of arson of a dwelling and violation of a domestic violence injunction.  Petitioner was sentenced to a mandatory 30-year term as a prison releasee reoffender.  *Id.* at 50-52.  Petitioner appealed, arguing that the evidence was insufficient to convict him of arson and that the jury instructions for arson were incomplete and confusing to the jury.  *Id.* at 58-88.  The First DCA affirmed, *per curiam*, without written opinion, and denied rehearing.  *Id.* at 118, 137.

Petitioner sought postconviction relief.  For purposes of this case, the relevant state postconviction proceeding is Petitioner's third amended Rule 3.850 postconviction motion, in which he asserted 27 claims for relief.  ECF No. 41-6 at 31-189; ECF No. 41-7 at 1-41.  The trial court (Judge Frank E. Sheffield) entered a nonfinal order summarily denying postconviction relief on Petitioner's Grounds 1-10, 12, 17, 21-25 and 27. The court set nine claims (Grounds 11, 13, 14, 15, 16, 18, 19, 20 and 26) for an evidentiary hearing.  ECF No. 41-7 at 86-98.  Petitioner filed a motion for disqualification and recusal of Judge Sheffield, arguing that Judge Sheffield had been an attorney of record appointed to represent Petitioner for a two-month period while his criminal case was pending.  Judge Sheffield recused himself and following additional recusals Petitioner's postconviction proceeding was ultimately presided over by Judge James C. Hankinson.  ECF No. 41-9 at 56-177.  The court appointed postconviction counsel for Petitioner, but subsequently discharged counsel on Petitioner's motion.  ECF 41-8 at 69.  At the conclusion of the evidentiary hearing, the court denied Petitioner's remaining postconviction claims.  ECF No. 41-9 at 171-77.  Petitioner appealed, and the First DCA affirmed the denial of relief *per curiam,* without a written opinion.  ECF No. 41-10 at 145.

The instant federal petition, which Respondent concedes is timely, followed.  Petitioner asserts nine claims for relief: (1) His arrest on a Georgia warrant was unlawful and counsel was ineffective for failing to move to suppress his subsequent confession; (2) His confession was obtained in violation of his *Miranda* rights; (3) Counsel was ineffective with respect to the jury instructions on arson and criminal mischief; (4) His conviction reflects "fundamental error" because the evidence was insufficient to convict him of arson; (5) Counsel was ineffective for failing to raise a "relevant" defense; (6) Florida's PRR sentencing statute is unconstitutional; (7) Cumulative errors by counsel; (8) Trial court error for failing to hold a *Faretta*-type hearing on Petitioner's motion to discharge postconviction counsel; and (9) Petitioner's constitutional rights were violated when Judge Sheffield summarily denied 18 of his postconviction claims.  ECF No. 27.

## II.  Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id.* at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at

trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* ___ *U.S.* ___, 134 S.Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the

Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at

15 (standard for reviewing claims of legal error by state courts is "highly

deferential").   This standard "recognizes a foundational principle of our

federal system: State courts are adequate forums for the vindication of

federal rights."   *Id*.   This highly deferential standard carries special force in

habeas cases asserting ineffective assistance claims: "Especially where a

case involves such a common claim as ineffective assistance of counsel

under *Strickland*[2]—a claim state courts have now adjudicated in countless

criminal cases for nearly 30 years—'there is no intrinsic reason why the fact

that a man is a federal judge should make him more competent, or

conscientious, or learned . . . than his neighbor in the state courthouse.'"

*Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037

(1976)).

In view of the deference afforded to the state courts' adjudication of

constitutional claims, "AEDPA erects a formidable barrier to federal habeas

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

relief for prisoners whose claims have been adjudicated in state court.

AEDPA requires 'a state prisoner [to] show that the state court's ruling on

the claim being presented in federal court was so lacking in justification that

there was an error . . . beyond any possibility for fairminded disagreement.'"

*Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770,

786–787 (2011).  "'If this standard is difficult to meet'—and it is---'that is

because it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 131 S.Ct. at

786).  "We will not lightly conclude that a State's criminal justice system has

experienced the 'extreme malfunction' for which federal habeas relief is the

remedy."  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV.  Discussion

### A.  Claim (1): "Unlawful" Arrest and Ineffective Assistance

Petitioner contends that he was unlawfully arrested pursuant to a

"non-extradition" warrant from Lowndes County, Georgia.  Petitioner argues

that the Georgia warrant was facially insufficient, and that his subsequent

interrogation by Fire Marshal Steadman resulted in a confession that was

inadmissible due to his unlawful arrest.  ECF No. 27 at 5.

The state court summarily denied this claim without an evidentiary

hearing, reasoning as follows:

> Defendant claims counsel was ineffective for failing to
> investigate the illegal nature of his arrest and confession. He

alleges that he was arrested on a non-extradition warrant that was subsequently altered to permit extradition through an interstate conspiracy between the two arresting officers, the Lowndes County District Attorney's Office, the Lowndes County Sheriff's Office, his Georgia probation officer, and a Lowndes County Superior Court judge. As a result, he claims, his arrest was illegal and his subsequent confession should have been suppressed. In support of this allegation he presents a transmission and warrant from Lowndes County and pages of conjecture.

Even assuming the warrant did not support Defendant's arrest, the evidence discovered by law enforcement prior to the arrest made a warrantless arrest permissible. *See* Fla. Stat. § 901.15. Prior to Defendant's arrest, fire department and law enforcement authorities had determined via their own senses, along with a specially-trained canine unit, that gasoline was used to start a fire on or next to apartment 300 of Savannah Sounds apartment complex. The tenant of that apartment, Barbara Waltz, informed investigators that she had problems with Defendant, had a restraining order against him, and believed that he had something to do with the fire. Upon canvassing nearby gas stations, they found gas station clerk Marcita Barrington who gave a statement indicating that moments before the fire was set, Defendant entered her store, made a non-specific threatening comment, and bought some gasoline and a lighter. The investigators were also provided with surveillance video which showed the same . . . . Accordingly, a motion to suppress Defendant's confession on the proposed grounds would have failed.

ECF No. 41-7 at 87-88 .

The state court thus determined that, as a matter of state law, the evidence discovered by law enforcement was sufficient to support a warrantless arrest.  Florida law permits a warrantless arrest under numerous circumstances, including when an officer reasonably believes

that a felony has been committed and the person to be arrested has committed it.  Fla. Stat. § 901.15(3).  Here, as outlined by the state court, there was ample evidence from which Steadman could reasonably believe that a felony – arson – had been committed and that Petitioner committed it.  There is no basis for this Court to examine the validity of the outstanding Georgia warrant because the state court concluded that Petitioner's arrest was lawful under state law even in the absence of a warrant.  Federal habeas courts are bound by state-court determinations on state-law questions. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("This Court ... repeatedly has held that state courts are the ultimate expositors of state law, and that we are bound by their constructions except in extreme circumstances....") (citation omitted); *Cargill v. Turpin,* 120 F.3d 1366, 1381 (11th Cir.1997) ("We are not at liberty to challenge [a] state court determination of state law.").

Moreover, Petitioner has not shown that the state court's rejection of his claim was based on an unreasonable application of *Strickland* or on an unreasonable determination of the facts. The undersigned has carefully reviewed the state court record, as summarized above. The state court's

factual findings are amply supported by the record and are presumed correct. Petitioner has not rebutted those findings with clear and convincing evidence to the contrary. Based on the state court's findings, it was not unreasonable for the court to conclude that counsel was not ineffective because the record demonstrates that a suppression motion on Petitioner's proffered basis would not have succeeded. *See Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986) (holding that for a defendant to prevail on an ineffective assistance claim where counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must establish deficient performance and prejudice under *Strickland,* and "must also prove that his Fourth Amendment claim is meritorious") (*citing Strickland,* 466 U.S. at 688, 694); *see also Freeman v. Attorney Gen., Fla.,* 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]"); *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Bolender v. Singletary,* 16 F.3d 1547, 1473 (11th Cir.1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state courts' rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland,* nor was the ruling based

on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground One.

## B. *Claim (2): Violation of Miranda Rights*

Petitioner contends that his *Miranda* rights were violated by Steadman because he "disregarded" Petitioner's invocation of his rights to counsel and to remain silent. He asserts that Steadman provided him with a legally insufficient *Miranda* warning form. Petitioner claims that when he was asked if he wanted to talk about the investigation prior to making incriminating statements he said "No" and stated that he needed to speak to his fiancée. He contends that his trial counsel should have moved to suppress his "coerced" confession. ECF No. 27 at 7.

The state court summarily denied this claim for the following reasons:

Defendant claims counsel was ineffective for failing to suppress his illegally-obtained confession. In support of this claim, he alleges that the arresting officers failed to honor his initial invocation of his right to remain silent and consult an attorney upon his arrest and failed to interpret his request to speak with his common-law wife as his desire to end the interrogation conducted hours later.

Both of these claims fail. Defendant's immediate attempt to invoke his right to counsel upon his arrest, pre-*Miranda*, was separated from his *Mirand*-ized interrogation by several hours. *See Defendant's Third Amended Motion, pp. 31, 47*. Consequently, the interrogation was not rendered impermissible. *See Sapp v. State*, 690 So. 2d 581, 586 (Fla. 1997) ("Freely given, voluntary confessions are an unqualified good. A rule allowing one to invoke the right to counsel

for custodial interrogation before it is even imminent . . . would provide little additional protection against involuntary confessions but would unnecessarily hinder lawful efforts by police to obtain voluntary confessions."); *Pardon v. State*, 930 So. 2d 700, 703-04 (Fla. 4th DCA 2006) (holding that an invocation of the right to counsel several hours before questioning is anticipatory, and does not preclude that questioning.) Likewise, his attempt to invoke his right to silence pre-custodial interrogation was premature. Moreover, it was scrupulously honored until he was advised of his *Miranda* rights and chose to waive them. *See Defendant's Third Amended Motion, pp. 31-32; Exh. 2, p. 81; see generally Cuervo v. State*, 967 So. 2d 155 (Fla. 2007).

Next, Defendant makes vague insinuations that he was not properly advised of his *Miranda* rights, and did not properly waive them because (1) his signature on the *Miranda*-rights form is not a clear indication that he was aware of his rights and waived them, (2) he did not read the form out loud, nor did the officers read it to him, (3) he never signed a waiver form; (4) the *Miranda*-rights form did not adequately inform him that he could end the interrogation at any time and have a lawyer provided, (5) he had vision complications and it is 'not even clear [he] was able to read the *Miranda* form,' and (6) he has mental health complications and it is 'not even clear [he] even understood the seriousness of the situation.' There is no reasonable probability that any or all of these equivocal and vague allegations would have served as a successful basis for suppression, especially in light of the *Miranda* form he signed and his statements to police.

As for Defendant's allegation that his request to speak with his "common-law" wife evinced his desire to terminate the interrogation, he omits the fact that he requested to speak with his wife only so they could settle financial affairs because he knew he was going to jail. *Exh. 2, pp. 86-87*. This request cannot reasonably be construed as Defendant's invocation of his right to remain silent, and therefore, would not have served as a valid ground for suppression. *See e.g., Dixon v. State*, 72 So. 3d 171, 176 (Fla. 4th DCA 2011) ("A suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent."). Defendant also implies that a short gap in his interrogation

required that he be re-advised of his *Miranda* rights. This is incorrect. *See generally Ross v. State*, 45 So. 3d 403 (Fla. 2010). For each and all of the foregoing, Defendant is unable to demonstrate any deficiency in, or prejudice from, counsel's failure to move for suppression on the proposed grounds.

ECF No. 41-7 at 88-90.

The state court's analysis reflects that it made detailed factual findings on this claim that are supported in the record and must be presumed correct absent clear and convincing evidence to the contrary. Petitioner has adduced no such evidence. Petitioner provided this Court with a DVD containing a recording of his interrogation, which the Court has reviewed in its entirety. The Court finds that there is nothing in the video recording of Petitioner's interrogation and confession that undermines the state court's well-supported factual findings.

Petitioner conclusionally alleges that the *Miranda* form he signed was legally insufficient, but he has not shown that he properly exhausted a challenge to the form as a substantive claim independent of the related ineffective-assistance claim. The record does not reflect that he challenged the form during his initial criminal proceedings or on direct appeal. *See Taylor v. Sec'y,* 2013 U.S.App. LEXIS 2829, at *11 (11th Cir. Feb. 11, 2013) (unpublished) ("[F]or purposes of exhaustion of state remedies, a substantive claim is separate and distinct from an ineffective assistance of

counsel claim based on the substantive claim.") (citations and internal quotation marks omitted).

Even if this claim were not procedurally barred, it would fail on the merits. The *Miranda* waiver form highlighted in pertinent part that Petitioner had "the right to talk to a lawyer for advice before we ask you any questions, and to have him with you *during questioning*."  ECF No. 2 at 14 (emphasis added).  Steadman read the form in its entirety to Petitioner prior to having him sign the form, and Petitioner acknowledged that he understood his rights.  See ECF No. 2, Appendix "D" (DVD of interrogation).  These verbal and written warnings were sufficient for Petitioner to understand that he had a right to have an attorney present at any point during the interrogation. *See Florida v. Powell,* 559 U.S. 50, 62 (2010) (finding *Miranda* warning was sufficient where it "reasonably conveyed" the defendant's right to have an attorney present not only at the outset of interrogation, but at all times).  Moreover, the video recording of the interrogation reflects that Petitioner did not seek to terminate questioning and invoke his *Miranda* rights.  As the state court found, Petitioner stated only that he wanted to speak with Nichole Waltz in order to provide her with financial and other personal information before Petitioner was jailed.

For these reasons, the state courts' rejection of Petitioner's ineffective-assistance claim was neither contrary to, nor an unreasonable application of *Strickland,* nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Two.

## C. *Claim (3): Ineffective Assistance Regarding Jury Instructions*

Petitioner claims that his trial counsel was ineffective for failing to object to, and request modification of, "insufficient" jury instructions. Specifically, Petitioner contends that the jury instruction for criminal mischief, like the arson instruction, identified the apartment building as the intentionally damaged object, rather than just the grass that Petitioner contends he intended to burn, and thus did not permit the jury to find him guilty of a lesser offense than arson.  ECF No. 27 at 8-9.

The state postconviction court rejected this claim for the following reasons:

> His contention is that the instructions on the lesser included charge [of] criminal mischief was in error because it said that the damage was to the building rather than to the grass. It would have been totally improper to instruct on a lesser of criminal mischief of the grass. He was not charged with burning the grass. That would have been totally improper. So there was certainly no error in declining to do a criminal mischief about burning the ground. That's the way I understand his argument here today. Nor was Mr. Cummings ineffective for failing to make that argument. It would not have been a winning argument. He was not charged with that. Ground 14 is essentially the same

argument. Instead of arguing ineffective assistance of counsel,
arguing fundamental error. I don't find any fundamental error.

As the state court explained, Petitioner was not charged with a

criminal offense for burning grass.  The trial court, without objection,

delivered the standard Florida jury instruction on arson as well as

Petitioner's requested instruction for the lesser-included offense of criminal

mischief:

> [T]o prove the crime of arson of a dwelling, the State must
> prove the following three elements beyond a reasonable doubt:
> One, defendant damaged or caused to be damaged a structure
> or its contents located at 1950 North Pointe Boulevard, the building
> with Apartment 300, by fire.
> Two, the damage was done willfully and unlawfully.
> Three, the structure was a dwelling.

The court also defined the terms "structure" and "dwelling".  ECF No. 41-2

at 34.  The trial court then explained what lesser-included offenses are and

instructed the jury on the lesser-included offense of criminal mischief:

> To prove the crime of criminal mischief, the State must prove
> the following four elements beyond a reasonable doubt:
> One, defendant injured or damaged the building with Apartment
> No. 300, or its contents, at 1950 North Pointe Boulevard.
> Two, the property injured or damaged belonged to the victim,
> Barbara Waltz.
> Three, the injury or damage was done willfully and maliciously,
> Four, the damage to the property was $1000 or greater.

*Id.* at 35-36.  The court also defined the terms "willfully" and "maliciously".

*Id.*

These instructions were the standard Florida jury instructions for arson and criminal mischief.  The decision not to have additional instructions for other lesser-included offenses was made after counsel conferred with Petitioner in court during the discussion of the jury instructions.  ECF No. 41-1 at 210-13.  Under Florida law, by affirmatively requesting the instruction on criminal mischief, the defense waived any claim of trial court error on direct appeal. *See Armstrong v. State*, 579 So.2d 734, 735 (Fla. 1991) ("By affirmatively requesting the instruction he now challenges, [the defendant] has waived any claim of error in the instruction.").

To the extent that Petitioner claims as a matter of federal due process that the state court erred in instructing the jury, "[a]n error in instructing the jury cannot constitute a basis for habeas relief unless the error so infected the entire trial that the resulting conviction violates due process." *Jacobs v. Singletary*, 952 F.2d 1282, 1290 (11th Cir. 1992) (quotation omitted).  As explained below, the evidence presented at trial was sufficient to support the jury's verdict of guilty on the arson charge.  As such, the Court finds that Petitioner has failed to demonstrate that this alleged error "infected the entire trial" so as to result in a due process violation.  *See Jacobs,* 952 F2d at 1290.

As an ineffective-assistance claim, counsel cannot be deemed deficient for failing to object to standard jury instructions that have not been invalidated by the Florida Supreme Court. *Rodriguez v. State*, 919 So. 2d 1252, 1272 (Fla. 2005); *Elledge v. State*, 911 So. 2d 57, 77 (Fla. 2005); *Rosado–Rodriguez* v. Sec'y, Dep't of Corr., No. 8:15–CV–1260–T–33AEP, 2016 WL 1305152, at *14 (M.D. Fla. Apr. 4, 2016) ("Failure to object to a standard jury instruction is not ineffective assistance of counsel."). Because of the facts of the case and the nature of the offense charged, there was overlap in the arson and criminal mischief instructions, but Petitioner has not established that such circumstances render counsel's performance deficient.

Thus, the state courts' rejection of this ineffective-assistance claim was neither contrary to, nor an unreasonable application of *Strickland,* nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Three.

## D.  *Claim (4): Sufficiency of the Evidence*

Petitioner alleges that the state failed to prove all elements of the alleged offense of arson. Specifically, Petitioner contends that the State failed to prove Petitioner's intent to damage the apartment building. ECF

No. 27 at 10.  The Court construes this claim as a challenge to the

sufficiency of the evidence against Petitioner.

When reviewing a claim of sufficiency of the evidence on federal

habeas review, this Court is required to view the evidence in the light most

favorable to the prosecution and determine whether any rational trier of fact

could have found the essential elements of the crime beyond a reasonable

doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  As the Eleventh

Circuit has explained:

> Faced with a record of historical facts that supports conflicting
> inferences, we must presume that the jury resolved such conflicts in
> favor of the prosecution, and we defer to the jury's judgment as to the
> weight and credibility of the evidence. *See Wilcox v. Ford*, 813 F.2d
> 1140, 1143 (11th Cir.1987). The simple fact that the evidence gives
> some support to the defendant's theory of innocence does not war
> rant the grant of habeas relief. *Id*.

*Conklin v. Schofield*, 366 F.3d 1191 (11th Cir. 2004); *see Young v. Kemp*,

760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no

power to grant habeas corpus relief because it finds that the state

conviction is against the 'weight' of the evidence[.]").  "In determining

whether the facts of a particular case satisfy the *Jackson* standard, it is

necessary to refer to the essential elements of the crimes as defined by

state law."  *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citations

omitted).

In considering Petitioner's motion for a judgment of acquittal on the arson charge, the trial court pointed to some of the evidence from which the jury could infer Petitioner's intent:  Petitioner's statements that he was angry at Barbara Waltz; his knowledge about where she lived; the location of the accelerant; and Petitioner's purposeful actions in buying gasoline and a lighter.  ECF No. 41-1 at 222-24.  Based upon this Court's review, other evidence from which the jury could have found intent to commit arson includes the substantial quantity of gasoline purchased and used, which witnesses testified still smelled strongly even after the fire; the extensive damage to the building, which is inconsistent with Petitioner's theory that the act was merely a "prank"; and Petitioner's falsehoods to law enforcement up until the point that he was confronted with the video evidence obtained from the Circle K.  Petitioner testified that it was not his intent to burn the building, but the jury was free to disbelieve Petitioner's self-serving statements about his intent and conclude from the other circumstantial evidence that Petitioner intended to damage the dwelling with fire.

To the extent that Petitioner argues the evidence was insufficient because it was circumstantial, such a claim provides no basis for federal habeas corpus relief.  The Supreme Court has held that under federal

constitutional law circumstantial and direct evidence is treated the same, and "'[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *Desert Palace Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 508 n. 17 (1957)).  In the context of a criminal conviction, the Court has stated "we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."  *Desert Palace*, 539 U.S. at 100 (citing *Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence")).

Accordingly, Petitioner has failed to show that the state court's denial of relief on this claim was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts in light of the evidence presented in state court.  Petitioner is not entitled to federal habeas relief on Ground 4.

## E.  *Claim (5): Ineffective Assistance Regarding Defense Strategy*

Petitioner contends that his counsel failed to present an "agreed upon" defense at trial and "failed to raise any relevant defense" at trial.

Petitioner appears to contend that counsel was ineffective in litigating the theory that Petitioner lacked the intent to commit arson. ECF No. 27 at 12.

The state postconviction court reviewed the trial proceedings and concluded that counsel had, in fact, pursued a defense based on lack of intent, as evidenced by counsel's questioning of Petitioner and Nichole Waltz and his cross-examination of the State's witnesses. ECF No. 41-9 at 175. In his postconviction proceeding, Petitioner complained that counsel did not specifically argue that Petitioner intended only to burn the word "bitch" in the grass, and that he poured the gasoline in a very small area. Cummings testified at the evidentiary hearing that he learned of this version of events only when Petitioner offered the testimony at trial. At the close of all of the evidence, Cummings did not renew his motion for a judgment of acquittal because he believed that Petitioner's new version was contrary to the other evidence showing that the gasoline was spread about ten feet or so along the wall of the building. Cummings also testified that he was able to introduce self-serving hearsay regarding Petitioner's asserted lack of intent through the law enforcement witnesses as well as through Nichole Waltz. ECF No. 41-9 at 115-47. The postconviction court therefore rejected this claim because counsel did not perform deficiently. *Id.* at 175.

Based on the Court's review of the trial record and the record of Petitioner's postconviction proceedings, the Court concludes that the record does not factually support Petitioner's claim that counsel failed to pursue a relevant defense strategy. The record establishes that counsel did pursue a strategy of arguing that Petitioner lacked intent to commit arson. The state courts' rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland,* nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground Five.

## F.  *Claim (6): Constitutionality of PRR Statute*

Petitioner contends that Florida's PRR sentencing statute is unconstitutional because it vests the state attorney with the powers of both prosecutor and sentencing judge and violates double jeopardy because it punishes a defendant for past crimes. ECF No. 27 at 13.

A habeas petition grounded on issues of state law provides no basis for habeas relief because a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120-21 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). A federal writ of habeas corpus is only available in cases of federal

constitutional error. *See Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir.1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir.1990).  The limitation on federal habeas review applies with equal force when a petition, which truly involves only state law issues, is couched in terms of alleged constitutional violations.  *Branan*, 861 F.2d at 1508.

Petitioner's challenge to his state PRR sentence challenges the application of a state sentencing law, and therefore the claim is not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(a); *Engle*, 456 U.S. at 120-21; *Branan*, 861 F.2d at 1508.

Despite Petitioner's conclusional assertion that his sentence violated federal due process and other constitutional provisions, Petitioner's claim is not cognizable on federal habeas corpus review because he makes no showing of a federal constitutional violation.  *See* 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, ___ U.S. ___, 131 S.Ct. 859, 861 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle,* 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

This Court has consistently rejected similar habeas corpus claims. *See*, *e.g., Coley v. McNeil*, 2009 WL 563891 at *2 (N.D. Fla., March 2, 2009). In *Coley*, the petitioner contended that he was erroneously sentenced as a habitual offender, and because of the error, he was denied due process and equal protection. *Id.* This Court concluded that the petitioner was attempting to "couch" his state sentencing claim as one of constitutional error and found that the petitioner had only presented a state law claim. *Id.* Thus, the petitioner's sentencing claim was not cognizable on federal habeas review. *Id.*; *see also Branan*, 861 F.2d at 1508*; Estelle*, 502 U.S. at 71-72; *Carrizales*, 699 F.2d at 1055; *Jones v. Sec'y Dep't of Corr.*, 2006 WL 2724892 at *3 (M.D. Fla., Sept. 22, 2006) (finding that, because petitioner's claim challenging designation as a habitual offender was a matter of state law, his sentencing claim was not cognizable on federal habeas review).

Accordingly, Petitioner is not entitled to federal habeas relief on Ground 6.

## G. *Claim (7): Cumulative Errors by Counsel*

Petitioner argues that his trial counsel "failed to do a single act in an attempt to benefit Petitioner. The cumulative effect of counsel's failures denied Petitioner due process, a fair trial, and effective assistance of

counsel."  ECF No. 27 at 14.

In rejecting a similar "cumulative error" argument made by a § 2254 petitioner, the Eleventh Circuit has stated, "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x. 560, 564 (11th Cir. 2009) (*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564–65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

As previously discussed, Petitioner has not demonstrated any of his trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance.  Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated his trial was fundamentally unfair.  *Walls v. McNeil*, No. 3:06-

cv-237-MCR, 2009 WL 3187066, at *30–*31 (N.D. Fla. Sept. 30, 2009) ("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair.").

Therefore, this claim presents no basis for federal habeas corpus relief.

## H.  *Claims (8) & (9):  Alleged Errors in Postconviction Proceedings*

Petitioner argues that he was denied due process during his postconviction proceedings because the state court failed to hold a *Faretta*-type hearing on his motion to discharge postconviction counsel and because a judge, who was previously one of Petitioner's attorneys of record, summarily denied 18 claims in his postconviction motion.  ECF No. 27 at 15-18.

Asserted constitutional errors in postconviction proceedings are not cognizable on federal habeas corpus review.  *See Alston v. Dep't of Corr. Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (postconviction court's decision that petitioner was competent to waive his postconviction proceedings and that waiver was valid was not cognizable on federal habeas review

because claim did not implicate the legality of detention); *Carroll v. Sec'y, Dept. of Corr.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (claim that state court violated due process when it summarily denied postconviction claim without an evidentiary hearing did not state cognizable federal habeas claim); *Quince v. Crosby*, 360 F.2d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (claim that errors in 3.850 proceeding violated due process did not state a claim for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention.").

Here, Petitioner's claims alleging errors in his postconviction proceeding do not implicate the cause of his detention.  These claims are not cognizable on federal habeas review.

## V.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court

issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI. <u>Conclusion</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 27, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 1st day of May 2019.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.